UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| TIMOTHY RAY GROH, | ) | | |
|---|---|---|---|
| Petitioner, | ) | | |
| v. | ) | Nos. | 2:15-CR-69-RLJ-MCLC |
| | ) | | 2:16-CV-107-RLJ |
| UNITED STATES OF AMERICA, | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION

Timothy Ray Groh ("Petitioner") pled guilty to an information charging him with the conversion of money from the United States [Doc. 1, Case No. 2:15-CR-69].[1] Thereafter, he was convicted and sentenced to 27 months' imprisonment [Doc. 15, Case No. 2:15-CR-69]. Petitioner has now filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and a supporting brief [Docs. 1 and 3]. The United States has responded in opposition to Petitioner's motion to vacate [Doc. 5], and Petitioner has filed no reply.

The Court finds the materials thus submitted, together with the record in the underlying criminal case, conclusively show that Petitioner is not entitled to relief on his § 2255 claims. Accordingly, the Court will decide Petitioner's motion to vacate without an evidentiary hearing. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). For the reasons discussed below, the Court finds that Petitioner's § 2255 motion lacks merit and, thus, will **DENY** and **DISMISS** his § 2255 motion with prejudice.

---

[1] Unless otherwise indicated, docket references are to document numbers in Case Number 2:16-CV-107.

## I. PROCEDURAL HISTORY

On February 10, 2015, a federal grand jury filed a 10-count indictment charging Petitioner and others with criminal offenses [Doc. 3, Case No. 2:15-CR-12]. As to Petitioner, the indictment alleged a conspiracy to commit wire fraud and a conspiracy to launder money in connection with a fraudulent tax refund scheme. As noted, Petitioner then plead guilty to an information, charging him with conversion of money from the United States in violation of 18 U.S.C. § 641 [Docs. 5 (criminal minutes) and 17 (amended judgment), Case No. 2:15-CR-69]. Upon the Court's direction, the U.S. Probation Office prepared a presentence investigation report ("PSR") to assist the Court in sentencing Petitioner [Doc. 8 (sealed), Case No. 2:15-CR-69].

The probation officer determined that Petitioner's base level offense under § 2B1.1 was 6. With an 8-level increase under § 2B1.1(b)(1)(E) for the stipulated loss amount (more than $70,000 but less than $120,000), Petitioner's adjusted offense level was 14. Two points were deducted for acceptance of responsibility, yielding a total offense level of 12. Based on a criminal history score of eleven, Petitioner's criminal history category was V. Given Petitioner's category V criminal history and his total offense level of 12, his advisory guidelines range was calculated to be 27 to 33 months' imprisonment. Petitioner objected to the PSR, specifically to the offense dates set forth in the factual summary and to the subsequent criminal history category calculations that were based on those offense dates [Doc. 9, Case No. 2:15-CR-69].[2]

---

[2] Petitioner's objection was supported by his argument that the offense actually occurred on October 6-8 of 2010 (not January 2008 to March of 2012 as set forth in the PSR) because those dates were listed in the information as the dates that Petitioner withdrew funds from a bank account that had been deposited in that account by the U.S. Treasury. Narrowing the offense date to those two days in October, 2010 would have resulted in fewer criminal history points and, ultimately, would have led to a lower guidelines sentence range [Doc. 13 (sealed), Case No. 2:15-CR-69].

The probation officer responded to Petitioner's objection, pointing out that the offense dates listed in the PSR had evidentiary support [Doc. 13 (sealed), Case No. 2:15-CR-60]. And as the United States correctly argues in its response to the § 2255 motion, Petitioner stipulated in his plea agreement that: (1) the fraudulent tax refund offense occurred between January 1, 2008 through March 1, 2012, (2) during that period he stole Social Security numbers that co-defendants then used to prepare and submit false federal income tax returns, ultimately resulting in illegitimate income tax refunds being deposited into an account to which he had access, and (3) he knowingly withdrew the stolen funds in cash [Docs. 2, 5, Case No. 2:15-CR-69]. The Court imposed a 27-month sentence, the lowest sentence in Petitioner's advisory guidelines range [Doc. 17, Case No. 2:15-CR-69]. Petitioner did not appeal, in keeping with his limited waiver of appeal rights in the plea agreement [Doc. 2 ¶ 13(a), Case No. 2:15-CR-69]. There followed this instant § 2255 motion.

## II. FACTUAL BACKGROUND

The factual scenario surrounding Petitioner's offenses is derived from his stipulations in his plea agreement [Doc. 2 ¶4(a)-(f), Case No. 2:15-CR-69].

From January 1, 2008, through March 1, 2012, Petitioner participated in a fraudulent tax refund scheme. The co-defendants who devised the scheme recruited Petitioner and asked him to provide Social Security numbers, addresses, and assorted personal identifying information of other individuals to enable the co-defendants to prepare and submit false federal income tax returns to the United States Treasury ("U.S. Treasury") and its agency, the Internal Revenue Service ("IRS").

Terri Lynn Worley, who also was charged in the indictment with conspiracies to commit wire fraud and to launder money, knowingly prepared and electronically submitted false income tax refunds to the IRS, thereby generating illegitimate federal income tax refunds by the U.S. Treasury. (The conspiracies netted 1.2 million dollars in defrauded funds.) Those refunds were

3

electronically transferred to a bank account, titled in Worley's name, to which Petitioner had access. When funds were received into that bank account, Petitioner withdrew the funds and spent them for himself and Worley. More particularly, in early October of 2010, Petitioner had access to and he used Worley's bank account to withdraw some $30,000 to $40,000 of funds belonging to the U.S. Treasury from that account.

Based on the evidence summarized above, Petitioner pled guilty and was convicted of conversion of money from the United States, as set forth in his plea agreement.

### III. STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion).

To justify relief for a non-constitutional error, a petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error that violated due process. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to secure collateral relief. *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

4

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). The hurdle a petitioner faces to overcome a procedural default is "intentionally high[,]…for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

## IV. DISCUSSION

Petitioner's § 2255 motion and brief assert several claims of ineffective assistance and sentencing lapses. Some claims assert both ineffective assistance and sentencing failures. For example, Petitioner's claim raised under the authority of *Johnson v. United States*, 135 S. Ct. 2551 (2015), is offered as both an instance of ineffective assistance and a sentencing misstep. Lastly, Petitioner advances a plea to reduce his sentence.

In its response, the United States argues that claims based on counsel's purported shortcomings are meritless; that missteps in the application of the sentencing guidelines are not cognizable on collateral review, have been procedurally defaulted, or are groundless; that the

*Johnson*-based claim is unfounded; and that Petitioner's request for a sentence reduction cannot be entertained in § 2255 proceedings [Doc. 5].

**A.      The Claims**

    **1.      Ineffective Assistance of Counsel**

Petitioner's multiple claims of ineffective assistance are governed by specific standards enunciated by the Supreme Court, specifically by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, a petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). A court must presume that counsel's assistance was effective, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (instructing reviewing courts to "remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'") (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d. 177, 201 (6th. Cir 2003) (citing *Strickland*).

Second, a petitioner must show prejudice resulting from the deficient performance by demonstrating "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable

6

probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

A modified prejudice component applies upon a conviction pursuant to a guilty plea. In the context of guilty plea, prejudice is demonstrated by a petitioner who "show[s] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "This is an objective, not a subjective, test: 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Underwood v. United States*, No. 18-5793, 2018 WL 7140598, at *2 (6th Cir. Nov. 19, 2018) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). A court must be mindful that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

a. **Failure to Provide Petitioner with Discovery Materials**

Petitioner contends that he requested counsel to provide him discovery that had been obtained from the prosecution, but that counsel failed to comply with his request. According to Petitioner, he asked counsel to see the "discovery packet," but counsel failed to produce it for Petitioner's perusal, to discuss it, or to explain what discovery had been obtained in the case.

A petitioner must state facts that point to a real possibility of constitutional error to be entitled to habeas corpus relief. *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977). As explained,

7

claims that lacks factual support are conclusory, and it is well settled that conclusory claims fail to state a claim for collateral relief under § 2255. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court; *see also* Rule 2(b), Rules Governing Section 2255 Proceedings For The United States District Courts (stating that a § 2255 motion "shall specify all the grounds for relief available to the moving party [and] shall state the facts supporting each ground").

Here, Petitioner does not indicate when he requested that counsel supply him with the "discovery packet," does not allege whether more than a single request was made, does not identify the discovery materials that were not provided or discussed with Petitioner, or the effect the provision of the discovery packet to him and a discussion thereto would have had on his case. Moreover, even if there was unshared discovery, Petitioner does not explain or present evidence to demonstrate why counsel's performance was deficient for failure to share that discovery.

Because a petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S. C. § 2255, Petitioner's conclusory allegations do not warrant § 2255 relief for this claim. *See, e.g., United States v. Santiago*, 135 F. App'x 816, 823 (6th Cir. 2005) (finding that arguments lacking supporting analysis need not be considered); *Noble v. United States*, No. 2:10-CR-51, 2018 WL 4441240, at *11 (E.D. Tenn. Sept. 17, 2018) (finding that "Petitioner's conclusory statements regarding counsel's discovery failings do not state a claim cognizable under § 2255").

Even if Petitioner's claim were not conclusory, courts have found that, generally, the Constitution does not obligate an attorney to provide discovery materials to a criminally accused client. *See e.g., United States v. Stewart*, No. CRIM.A. 08-124, 2011 WL 382206, at *4 (E.D. Ky.

Jan. 4, 2011) ("The Court can find no authority suggesting that an attorney renders constitutionally ineffective assistance by failing to share discovery materials with the defendant."), *report and recommendation adopted*, No. CRIM. 08-124-ART, 2011 WL 381951 (E.D. Ky. Feb. 2, 2011); *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none."); *but see United States v. Baptista*, No. CR 10-0050 PJH, 2011 WL 738355, at *8 (N.D. Cal. Feb. 23, 2011) (observing that "a failure to provide discovery to a client who has specifically asked to see it, is clearly not an acceptable way of representing a criminal defendant facing a ten year prison term"). It remains that Petitioner has failed to identify any specific discovery materials that counsel should have shared and reviewed with him; thus, there are no facts upon which to find a constitutionally deficient performance.

Even if counsel's failure to share discovery with Petitioner could amount to a deficient performance, Petitioner offers no claim of prejudice. *See Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (finding that "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice"). Petitioner has not alleged that, but for counsel's failure to share and discuss discovery materials with him, he would have declined to plead guilty and, instead, would have chosen to stand trial. Petitioners who assert claims of "ineffective assistance of counsel under *Strickland* have a heavy burden of proof," *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005), and, here, Petitioner has not borne his burden.

Petitioner's assertion that counsel gave him ineffective assistance in connection with discovery is conclusory and, alternatively, lacks merit because there is no showing of a prejudicial performance on the part of counsel. This claim is rejected.

9

### b. Failure to Contest the Amount of Loss

Petitioner alleges that, at sentencing, counsel did not argue that his client possessed no bank accounts, though this fact would have been a valid issue to raise in defense of the loss amount for which Petitioner was held accountable [Doc. 1 at 4, 17]. Petitioner further maintains that he received an incorrect sentence due to counsel's failure to present a defense "for involvement & monetary amounts" [Doc. 1 at 7].[3]

Again, Petitioner offers no developed argument to show how the failure to argue that he had no bank accounts relates to the amount of loss or constitutes ineffective assistance. As discussed, a naked assertion shorn of any factual elaboration is conclusory and does not justify collateral relief. *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (stating that claims asserted in a § 2255 motion "in the form of conclusions without any allegations of facts in support thereof" are "legally insufficient to sustain review" of the motion).

Even if Petitioner's claim were not conclusory, the elements of an offense under § 641 were listed Petitioner's plea agreement, as follows:

1) The defendant knowingly converted to defendant's use or converted to the use of another money with the intention of depriving the owner of the use or benefit of the money;

2) The money belonged to the United States; and

3) The value of the money was more than $1,000.

[Doc. 2 ¶ 99, Case No. 2:15-CR-69].

---

[3] Petitioner's claims are disorganized, overlapping, and repetitive. Finding many of those claims confusing at best, the Court has grouped together all similar allegations in the particular claim to which they belong. For example, Petitioner's claim that counsel did not argue an "involvement" defense has been discussed under the claim that Petitioner was a minor participant in the offense [Doc. 1 at 14-17].

Therefore, if it is the third element of the § 641 offense for which counsel is being faulted for failing to challenge, then, as Respondent correctly points out, Petitioner stipulated to that element in his plea agreement (i.e., the value of the money was more than $1,000—more than $70,000 and less than $120,000 to be precise) [Doc. 2 ¶¶ 3, 4(e), 7(b)]. The Sixth Circuit has held that "[i]t is not error for a court to sentence a defendant on the basis of facts to which the defendant himself admitted." *United States v. Salas*, 281 F. App'x 496, 500 (6th Cir. 2008) (citing *United States v. Booker*, 543 U.S. 220, 244 (2005)); *see also United States v. Poole*, 97 F. App'x 587, 588 (6th Cir. 2004) (denying relief on direct appeal where defendant admitted under "oath the facts establishing the essential elements of the offenses"); *cf., Perrone v. United States*, No. 09-CR-30016, 2016 WL 2910004, at *5 (S.D. Ill. May 19, 2016) (denying § 2255 relief where a petitioner admitted to the elements of the crime in a plea agreement), *aff'd*, 889 F.3d 898 (7th Cir. 2018).

Hence, Petitioner's assertion that counsel should have contested the amount of loss based on the "no bank accounts" argument is groundless and, hence, counsel did not render a prejudicial performance with respect to this alleged shortcoming. *See, e.g., Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise meritless issues); *United States v. Fry*, 831 F.2d 664, 669 (6th Cir. 1987) (failure to raise a meritless objection at sentencing not ineffective assistance).

This claim similarly is conclusory, and alternatively, lacks merit.

        **c.**      **Failure to Object to Elevated Criminal History**

In this claim, Petitioner asserts that counsel should have objected to his criminal history by arguing that his client had "0 criminal history in Tennessee," that his convictions in Michigan were

misdemeanors—one was a 2008 "DWLS" (driving while license suspended) and one was for failure to pay child support), that some DWLS convictions were rendered as far back as 25 years ago, and that the penalty imposed for some convictions was not for more than "(one) year and a day in jail" [Doc. 1 at 4, 17].

Respondent argues that because Petitioner's criminal history calculations were correct, there was no error to which counsel could have objected. Respondent's argument is sound. There was no error in Petitioner's guidelines calculation and the Court correctly sentenced him within the guidelines range set forth in his PSR. Consequently, Petitioner's claim must fail because the record refutes it.

According to the PSR, Petitioner had a lengthy criminal background, extending from offenses committed when he was a juvenile up to his late 30s and early 40s, the time of his involvement in federal criminal conduct. [Doc. 8 ¶¶ 41-53, ¶¶59-71]. Four of Petitioner's convictions resulted in a sentence of at least sixty days (i.e., the 1998 DWLS conviction [70-day sentence]; the 1999 DWLS conviction [93-day sentence]; the 2008 failure-to-pay-child-support conviction [80-day sentence] and the 2014 DWLS conviction [93-day sentence]).

Under U.S.S.G. § 4A1.1, each prior sentence of imprisonment imposed on a defendant that does not exceed "one year and one month" but is "at least sixty days" adds 2 criminal history points. U.S.S.G. § 4A1.1(a)-(b). Therefore, the probation officer properly added 2 criminal history points for each of the four prior Michigan convictions based on Petitioner's sentences of at least sixty days, but not more than a year and a day, resulting in a sum of 8 criminal history points. U.S.S.G. § 4A1.1(b), cmt. n.2.

Furthermore, Petitioner simply is wrong in alleging that he had zero criminal history points for convictions in Tennessee. Petitioner's prior Tennessee conviction for domestic violence added

1 criminal history point to the 8 points he received for the Michigan convictions. U.S.S.G. § 4A1.1(c) (instructing that 1 criminal history point is to be added "for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection"). Because the Tennessee domestic-violence conviction was not counted under U.S.S.G. § 4A1.1(a) and (b), as were the Michigan convictions, the probation officer was correct in adding 1 criminal history point for the Tennessee conviction, which increased Petitioner's criminal history points to 9.

Adding 2 points under U.S.S.G. § 4A1.1(d), because Petitioner committed the instant federal offense while he was under a criminal justice sentence for his Michigan conviction for failure to pay child support, resulted in a total criminal history score of 11 and established his criminal history category of V [Doc. 2 ¶¶ 55-56]. Respondent accurately argues, and the Court so finds, that Petitioner's criminal history was not "elevated" or inflated because Petitioner had been convicted of several other offenses for which no criminal history points were added.

Also, the allegation regarding an inflated criminal history is nested in an ineffective assistance of counsel claim—a claim that is refuted by the record. Counsel argued in the Sentencing Memorandum that Petitioner's criminal history overrepresented his client's prior criminal conduct "in that all but 3 of the 9 criminal history points" were attributable to Petitioner's "persistent impoverishment" and posited that, but for his client's poverty, he likely would have had only 3 criminal history points [Doc. 10 at 1]. The fact that the argument did not persuade the Court to vary downward from Petitioner's guideline imprisonment range of 27 to 33 months sentence cannot be ascribed to any failing on the part of counsel. In short, counsel's representation cannot be deficient for failing to do that which counsel, in fact, did do.

This claim lacks merit and is factually frivolous because the record conclusively contradicts it.

#### d. Failure to Argue for Minor Participant Adjustment

Petitioner's fourth claim of ineffective assistance seemingly is presented as both a shortcoming on the part of counsel and also as a sentencing claim [Doc. 2 at 7, 14-17]. For purpose of organization, the Court addresses the ineffective assistance aspect of the claim in the instant category of claims and the sentencing aspect of the claim in a separate category.

As to the ineffective assistance facet of this "minor participant" claim, the record shows that counsel argued in the Sentencing Memorandum for both a below guideline sentence and a downward variance based on the minimal role Petitioner played in the offense. For example, counsel argues that "Mr. Groh's role in the offense was miniscule relative to that of his codefendant in that he was around while some of the events were going on, and he spent some of the illegal proceeds from his girlfriend's ill[-]gotten gains" [Doc. 10 at 1, Case No. 2:15-CR-69]. Counsel further suggested that "Mr. Groh's role in the case was minimal" [Doc. 10 at 2, Case No. 2:15-CR-69].

The record refutes Petitioner's ineffective claim and it is completely meritless.

#### e. *Johnson*-based Claim

As the Court interprets Petitioner's cryptic reference to "Residual Clause" in his § 2255 motion [Doc. 1 at 4], he is claiming that counsel failed to object when his sentence was enhanced under the Armed Career Criminal Act ("ACCA"). In *Johnson v. United States*, 135 S. Ct. 2551 (2015), a case Petitioner relies on and discusses in his supporting memorandum brief [Doc. 3], the Supreme Court struck down the residual clause in the ACCA as unconstitutionally vague and held "that imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. Petitioner maintains correctly (but irrelevantly under the facts of his case) that the holding in *Johnson* applies retroactively. *See Welch*

*v. United States*, 136 S. Ct. 1257 (2016). Affording Petitioner's pro se argument the most liberal construction possible, he is alleging a claim of prejudice ensuring from counsel's purported misstep based on a "high likelihood [that his] criminal history [was] incorrectly computatated (sic)" [Doc. 3].

Petitioner's pro se allegations in this regard can also be read as a free-standing sentencing claim in view of his assertion that his criminal history category was "at least in part based on nonviolent charges that allowed the court to charge [him] with the armed career criminal enhancement" [Doc. 3]. Petitioner suggests that his criminal history category be recalculated, positing that a recalculation would result in a "lower punishment sentence range" and "a sentence reduction" [Doc. 3].

The record in Petitioner's criminal case refutes this claim in its entirety [Doc. 8. ¶¶ 36, 85-86 (sealed) and Docs. 15, 16 (sealed), Case No. 2:15-CR-69]. As the United States precisely argues, Petitioner was not classified or sentenced under the ACCA and no part of his sentence was based on the ACCA's residual clause or on the guidelines' residual clause in U.S.S.G. § 4B1.2[4] [Doc. 5 at 14]. Because J*ohnson* has no application in this case, any sentencing claim predicated on that decision is totally frivolous, as it lacks any factual basis.

Counsel is not required to advance arguments that are frivolous on their face to avoid a charge of ineffective assistance. *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986). Nor can counsel be ineffective when he does not raise a groundless claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).

---

[4] In any event, the *Johnson* holding does not apply to guidelines sentences. *Beckles v. United States*, 137 S. Ct. 886 (2017).

## 2. Sentencing Claims

### a. Minor Participant Adjustment

Petitioner seeks a reduced sentence based on Amendment 635 to U.S.S.G. § 3B1.2, a sentencing guideline that provides for a two-level decrease in the offense level if a "defendant was a minor participant in any criminal activity." A § 2255 motion must raise one of three types of claims: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)). Petitioner's claim is not included in one of the three genres of claims that is acceptable to plead in a § 2255 motion.

Furthermore, Amendment 635 to U.S.S.G. § 3B1.12 became effective on November 1, 2001, years prior to the time Petitioner was sentenced in October of 2015. As noted, claims other than ineffective-assistance-of-counsel claims are procedurally defaulted if not raised on direct appeal. *Bousley,* 523 U.S. at 621; *Peveler*, 269 F.3d at 698. Notwithstanding the fact that the Petitioner's plea agreement contained a provision waiving his right to file a direct appeal [Doc. 2 ¶ 12(a), Case No. 2:15-CR-59], he still could have presented the claim on direct appeal but he did not. *See Bookwalter v. United States*, No. 2:14-CR-82, 2018 WL 2407525, at *3, 5 (E.D. Tenn. May 25, 2018) (finding that argument not raised on direct appeal was procedurally defaulted, even though the petitioner had waived his right to file an appeal in the plea agreement); *Solomon v. United States*, No. 2:05-CR-92, 2011 WL 5434273, at *7 (E.D. Tenn. Nov. 9, 2011) (same). Neither cause nor prejudice has been alleged or shown, and this claim also is barred by Petitioner's procedural default.

Additionally, as Respondent points out, a court need not consider an issue raised in a movant's collateral review petition where the movant has agreed as part of a negotiated plea bargain to waive a direct appeal because to do so would circumvent the waiver [Doc. 5 at 12 (citing *United States v. Calderon*, No. 98-1336, 1999 WL 801587, at * 4(6th Cir. Sept. 27, 1999)]. Thus, because Petitioner's minor-role-reduction claim is a sentencing issue suitable for review only in a direct appeal and because such sentencing issues were subsumed in Petitioner's direct-appeal waiver, the Court will not entertain it.

What is more, Petitioner's request for a minor role reduction is groundless, as is his claim that "his involvement in the case should [have] been taken more into consideration at sentencing" [Doc. 1 at 17]. Such a reduction is available where a defendant is substantially less culpable that the average participant in the criminal offense. U.S.S.G. § 3B1.2, cmt. 3(A).

Petitioner acknowledged in the PSR that he was recruited and trained in a scheme to obtain personal identifying information from others to be used to prepare false federal income tax returns which were submitted to the IRS. When funds thus obtained were deposited into bank accounts, Petitioner even allowed bank accounts belonging to members of his family to be used for those deposits and the illegitimately-acquired funds were withdrawn from the bank accounts. Petitioner knowingly and actively participated in this criminal endeavor and, on October 6-8, 2010, withdrew $30,000 to $40,000 in cash from a bank account titled in Worley's name and spent the purloined funds to benefit himself and Worley. Petitioner did not perform a "limited function" in the scheme and he was convicted of "an offense significantly less serious than warranted by his actual criminal conduct," U.S.S.G. 3B1.2, cmt. 3(A) and (B), and he does not and did not qualify for a minor role adjustment.

Too, Petitioner's role in the offense was argued in the Sentencing Memorandum filed by counsel [Doc. 10 at 1-2, Case No. 2:15-CR-69]. In those arguments, Petitioner's role in the offense was characterized as "miniscule" [Doc. 10 at 1, Case No. 2:15-CR-69] and as "minimal" [Doc. 10 at 2, Case No. 2:15-CR-69]. In sentencing Petitioner, the Court adequately considered those arguments, rejected them because they were hollow, and finds that they remain so on collateral review.

Finally, a request to reduce a sentence must be brought by filing a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). Petitioner cannot seek a reduction of his sentence in a § 2255 motion. Indeed, Petitioner's request for a minor participant adjustment in his sentencing is not a cognizable claim that is reviewable in a motion to vacate. *Coleman v. United States*, No. 2:14-CR-28-RLJ-MCLC, 2018 WL 3150452, at *8 (E.D. Tenn. June 27, 2018) (explaining that a sentence reduction request is not cognizable in a § 2255 motion), *dismissed in part*, No. 2:14-CR-28-RLJ-MCLC, 2018 WL 3625830 (E.D. Tenn. July 30, 2018).

### b. Change in the Money Table

Petitioner maintains that "the money table has changed resulting in a 2 (two) or more point reduction by monetary amounts" [Doc. 1 at 5]. Petitioner adds that he "didn't actually have a monetary amount since he had no bank account" [Doc. 1 at 17]. The Court infers that Petitioner is referencing the fraud loss table in U.S.S.G. § 2B1.1, which presently calls for a six-level increase for a loss amount of more than $40,000 (an eight-level increase is warranted when the loss amount is more than $95,000). U.S.S.G. § 2B1.1(b((1)(D), (E). Petitioner was sentenced in October, 2015, when a loss amount of more than $70,000 required an eight-level increase [Docs. 8 (sealed), 14-15]. The loss table was revised on November 1, 2015, but the revisions to the fraud loss table were not made retroactive. *United States v. Conley*, No. 18-5582, 2019 WL 2403230, at *2 (6th

Cir. Jan. 9, 2019); *United States v. Javidan*, No. 11-20052, 2018 WL 3915648, at *1 (E.D. Mich. Aug. 16, 2018) (citing Historical Notes of the 2015 Amendments to U.S.S.G. § 2B1.1). In any event, a request for a reduction of sentence is not recognizable in a § 2255 motion. The "monetary amounts" claim was discussed and disposed of in a prior section of this Opinion.

## V. CONCLUSION

For the reasons discussed in this Memorandum Opinion, Petitioner's motion to vacate, set aside, or correct his sentence [Doc. 1] will be **DENIED** and **DISMISSED**.

## VI. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims or the procedural rulings made on the claims was debatable or wrong. Because reasonable jurists could not disagree with the Court's denial of the § 2255 motion and could not conclude that issues offered in the motion are "adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will **DENY** issuance of a certificate of appealability. Fed. R. App. P. 22(b). Finally, the

Court will **CERTIFY** that any appeal from this action would not be taken in good faith, Fed. R. App. P. 24(a), and thus will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge